CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY VS. HOOVER.

Opinion delivered October 5, 1901.

*1. Negligence—Carrier—Injury to Passenger—Evidence.*

> An action was brought by a passenger against a railroad company for injuries to his arm which was struck by a cattle chute while the train was passing, and negligence of the company in permitting this chute to be so near the track, was alleged as the cause of the accident. Plaintiff testified that he did not think his arm projected, because he had several times after the accident experimented to discover its exact position when injured. Two witnesses testified that his arm projected from the window, and neither the window frame nor side of car was scratched by the chute. *Held*, that plaintiff failed to show by sufficient evidence to permit a favorable verdict of the jury to stand, the negligence of the company, and it was error to refuse a peremptory instruction to the jury to find for the defendant.

*2. Negligence—Iujury to Passenger—Instructions.*

> When the question before a jury in an action by a passenger for injuries occurring to him while riding on defendant's railway train, was whether the injury was occasioned solely by the negligence of the company or was contributed to by the plaintiff, it was error to charge the jury that "the controversy in this case seems to be as to the position of the arm of the plaintiff at the time of the injury." But this erroneous instruction was cured by other instructions fully defining negligence and contributory negligence.

*3. Negligence—Carriers—Instructions.*

> It is not error, in an action by a passenger against a railway company for personal injuries, to refuse an instruction to the effect that the defendant can avail itself of any contributory

acts of negligence on the part of plaintiff whether established by the evidence of plaintiff or defendant, where the jury was fully instructed as to contributory negligence, and that they are to consider the whole testimony in that respect, where testimony had been introduced by both plaintiff and defendant.

*4.   Negligence—Carrier—Personal Injuries—Evidence.*

In an action by a deputy marshal, a passenger, against a railway company for personal injuries, it was not error to permit plaintiff's counsel to ask plaintiff what he would have made on the trip if he had not been injured, and what his fees would have been had he not been prevented, by his injury, from completing his trip. But when his answer to such questions was unresponsive and not sufficiently clear for the jury to determine its meaning, the same should be stricken out, on motion.

Appeal from the United States court for the Southern district.   Hosea Townsend, Judge.

Action by J. W. Hoover against, the Chicago, Rock Island & Pacific Railway Company. Judgment in favor of plaintiff. Defendant appeals.   Reversed.

This was an action for damages for personal injuries, brought by the plaintiff (appellee here), J. W. Hoover, against the defendant railway company (appellant here), for injuries occurring to the appellee on the 24th day of April, 1899, and while riding on one of the passenger coaches of the appellant between Ft. Cobb and Oakdale stations on appellant's railway. Appellee, in his complaint, states: That he purchased one first-class passage over appellant's line of railway from Chickasha to Oakdale. That defendant, near Ft. Cobb station, negligently and carelessly placed a portable cattle chute, constructed of lumber and wood, upon and near its railway track, and which chute extended from the ground up and even to the opening in the windows of said passenger coaches then being run by said railway. That said cattle chute was, through the gross negligence

and carelessness and recklessness of the appellant and its agents, servants, and employes, left standing in such close proximity to its railway track that, when the train and car on which plaintiff was a passenger was passing said chute, said chute struck and came in contact with plaintiff's hand and arm while plaintiff was seated in one of the regular passenger coaches with a portion of his right arm resting upon the window sill of said passenger coach and the remainder of his arm inside of said coach, and that defendant ran said passenger car into, against, and in contact with and so close to the said cattle chute that, through the gross negligence, carelessness, and recklessness of defendant, its agents, servants, and employees, plaintiff's right arm was struck thereby just below the elbow joint; and said cattle chute did strike and catch plaintiff's coat with such force and in such way that plaintiff's right arm was thereby jerked and pulled out of said car, and out of and through said window, by reason thereof; and that plaintiff's right hand and arm were struck by said cattle chute, and were caught in said chute, and between the said chute and said car, without any fault or neglect on plaintiff's part; and said arm was broken and fractured below the elbow joint, breaking one of the bones, called the "radius," in plaintiff's right arm, and dislocating at the wrist the other bone, known as the "ulna," in plaintiff's right arm, and tore loose and damaged many of the small bones and muscles of plaintiff's right arm and hand and fingers, and otherwise injured the said plaintiff's right arm, hand, and fingers. That by reason of said injuries aforesaid the plaintiff suffered severe and excruciating pain, mental and physical, and will continue so to suffer during the remainder of his natural life, and that he was thereby forced to and did expend and pay out, and will be bound and forced to pay out and expend, the sum of $50 to physicians for services in the treatment of said injuries and wounds; and that he was thereby, and has been up to the present time, wholly unable and incapacitated for manual labor and

work, or to earn any money by work; and that said injuries and wounds are permanent, and of such nature as to deprive plaintiff of the same, and of the free use of his right hand, arm, and fingers. That plaintiff was a farmer and deputy marshal. That as a farmer his services were reasonably worth $40 per month, and as a deputy marshal his services were reasonably worth $75 per month. That he has no other calling or avocation which he can follow for a living,— and asks judgment for damages in the sum of $5,000. The defendant filed its answer, and, after certain admissions with reference to its being incorporated, and a common carrier, and of plaintiff's allegations that he was a passenger on one of its trains on the day in question, denies that it negligently or carelessly placed its cattle chute upon or near said railway track, and denies that said chute was by and through the negligence, carelessness, or recklessness of either said defendant or its agents, servants, and employees, left standing in such close proximity to defendant's track as to come in contact with the car in which plaintiff was seated, and denies that plaintiff was injured as alleged in his complaint, and denies that the said passenger car which plaintiff was occupying was run either into or against or in contact with said cattle chute, and denies that he was injured as alleged in said complaint, or that he expended for professional services the sum stated in his complaint, or any part thereof, or that the same, if made, was reasonable. Defendant admits that plaintiff was slightly injured by his hand and arm coming in contact with the cattle chute owned by defendant standing upon its right of way, but denies that the injuries received were either permanent or serious, or caused by any negligent act or omission of the defendant or any employee of the defendant, and denies that plaintiff was damaged by reason of said injury in the sum of $5,000, or any other sum, and alleges the said injury to said plaintiff was caused by his own negligent act. This cause was tried to a jury. Evidence was introduced by both plaintiff and defendant.

The jury were instructed by the court, and returned a verdict on the 26th day of October, 1900, finding in favor of the plaintiff, and assessing his damages at $1,500. Appellant filed its motion for a new trial, which motion was, on the 27th day of October, 1900, overruled by the court, and judgment entered upon the verdict, whereupon this appeal was prosecuted to this court.

*M. A. Low, W. F. Evans, C. O. Blake, E. E. Blake,* and *W. T. Beeks,* for appellant. *R. D. Welborne* and *Gilbert & Gilbert,* for appellee.

GILL, J. The rule is obvious that on appeal the judgment of a lower court will not be disturbed where the evidence is contradictory, if there be any evidence at all to sustain the verdict. In this case the only evidence introduced by the plaintiff tending to show his position in the car and the position of his arm at the time the train passed the cattle chute is that of his own; and it would seem from his testimony that after the accident, and before the trial, he was not at all sure whether his person was all inside of the car or not, as he testified as follows in his direct examination: "Q. Now, Mr. Hoover, state to that jury whether or not your arm, at the time you were struck, extended beyond the edge of the window sill, or outside of the edge. Do you know about how wide the window sill was on that car? A. No, sir; I don't know about how wide it was at all. I never measured it and have never taken any notice of it. I noticed them since, but don't know what that one was. Q. Can you state to the jury whether or not any part of your arm extended to the outside limits of the sill, or was it laying upon the sill? A. It was laying upon the sill. (Objected to as leading.) The Witness: I was sitting — remember that the window was on this side of me (indicating); just as though the window was on this side— Mr. Blake: The right side? Witness: Yes, sir; sitting on the

third seat back from the door. And I had my feet up in the second seat,—was turned up that way the train was going,—and I was leaning with my head back against the inside of the window; and, as I told you, my hand was laying up, something like that, in the window. Well, now, I don't think that my arm—because I have tried several times since —and I am positive that my arm was not out of the window until it was jerked out. Q. Now, Mr. Hoover, I will ask you this question: State whether since that time you have made any test, and placed yourself in the same position that you were sitting then, and your arm, to ascertain whether or not your arm could have been outside of the window or not. Mr. Blake: Was that in the same car? Mr. Welborne: In the same kind of cars. Mr. Blake: Objected to as irrelevant and incompetent. Court: Confine him to what he knows about it at that time. Mr. Welborne: We propose to prove by the witness here that since that time the witness on two or three different occasions, in similar cars to the one in which he was hurt, placed himself in the very same position that he was at that time, that he found on making test that it was impossible for his arm, or any part of it, to have been extending beyond the window sill, or to any extent outside of the window." It would seem from this testimony that the plaintiff himself, prior to giving his testimony, was not satisfied as to what his position was, and, in order to satisfy himself as to what his position was, went into the same kind of cars, and tested the matter; and it was a result of his test that he became positive as to what was the position of his arm at the time he was struck by the chute. It is also seen in his testimony that the hole torn in his coat which he was wearing was torn a little below the elbow, but his shirt was not torn, and that the point of his elbow was bruised. Opposed to this testimony we find the evidence of W. L. McCann, who was standing on the station platform as the train passed through Ft. Cobb, and who testified on page 86 of the record that the plaintiff was lying with his

head in the window: "Q. Was he awake? A. I don't think he was. Q. Well, what was he doing? A. Why, he was just laying with his head in the window. Q. Did you see his eyes? A. I couldn't say whether I noticed his eyes or not. Q. Notice whether they were opened or closed? A. I couldn't say. Q. Did you notice his arms? A. His arm was right up like that (indicating), extending arm straight from window. Q. Out of the window? A. Yes, sir. Q. How far was that from the point where the chute stood? A. Oh, I couldn't say the distance." And also the testimony of C. W. Doran, on page 92 of the record, who testified that he was a traveling salesman, and was about six seats in the rear of the plaintiff at the time of the injury, and who testified: "Q. Did you notice what he was doing? A. From my observation, the gentleman was reclining on the back seat asleep. Q. Did you notice his arms? A. His arm was out of the window. I could describe it akimbo, protruding out of the window. I noticed it from having walked up from the forward end of the car in conversation with a land seeker that was on the train. I didn't know his name or anything. We walked up while the train was at the station. Q When you walked back, what position was his arm in? A. If I remember, it was in that position that I described. Q. Did you notice him at the time he was injured? A. Well, I noticed him rise up. Just some commotion there. Some other passengers jumped up with him about the same time." Now, if this were all the testimony with reference to the position the plaintiff was in at the time he was injured, the court is of the opinion that the jury could find one way or another way, as they deemed the testimony weighty. But the testimony shows that on the sill and car there was a strip or molding running around the window from a half inch to five-eights in thickness; that just in front of the seat where plaintiff was was a closed glass window; that the front part of the car had passed the cattle chute without leaving a scratch or indentation

upon the car, and without breaking the glass of the window in front; that the width of the window by which the plaintiff was sitting at the time of the accident was 22 inches; that the width of the cattle chute in question was 60 inches; that no scratches or indentations appeared on the outside of the car to the rear of where the plaintiff was sitting; that it passed a signal flag or marker at the rear of the car without striking it unless it caught the flag; and that the train was going at the rate of from 10 to 14 miles per hour. If the plaintiff's testimony may be taken as true in opposition to the testimony of Doran and McCann, the verdict should be allowed to stand upon such testimony. But what weight should be given to the mute witnesses of the unscratched car and of the perpendicular chute? If the plaintiff's story can be taken as true at all, in view of the fact that he was so uncertain about it that he had to go and test the matter before he could testify positively, the laws of nature must suddenly have been subverted, and the car either twisted itself so as to take one point of the chute for the smallest fraction of a second, or the chute must have in some way changed its form, and some part of it protruded in the window for an infinitesimal period, and in as small a period regained its natural shape, in order that the statement of the plaintiff may be taken as true that his arm and clothing were wholly inside the car. The court must in some way be able to reconcile the testimony in this case consistently with the verdict before such verdict ought to be allowed to stand. In this case an examination of the evidence shows that no case was made on which a verdict ought to stand. It was, in our opinion, the duty of the court to have allowed the special instruction of the defendant to find in favor of the defendant, and failure to do so was error. And after the verdict, it was the duty of the court to have set aside such verdict and granted defendant's motion for a new trial, and failure to do so was error.

The court below, in charging the jury, in its third in-

struction said: "The controversy in this case seems to be as to the position of the arm of the plaintiff at the time of the injury." The question involved in the case was as to whether the injury occurred by the negligent act of the defendant or such injury was contributed to by the plaintiff. To eliminate from an instruction the idea of negligence on the part of one or other of the parties, and present to the jury for its decision a bald question of fact as deciding the case, it seems to us, is not the correct position in law upon the question of negligence. It is as though the court was to say: "If you find a fact to be one way, the court tells you that is not negligence; but, if you find it to be the other way, then such act constitutes negligence," instead of leaving the question of negligence as a matter of fact to be decided by the jury; and we think that this instruction, if it stood alone, eliminating as it does the question of negligence from the case, would be erroneous. But this instruction must be considered in connection with the court's instructions just preceding and following it, and, taken in that connection, the court fairly and fully defined negligence and contributory negligence in this particular case. The fact is to be found by the jury whether the plaintiff's arm and clothes were inside of or extended outside of the window of the car at the time of the accident. If the position were one way or the other, it would or would not be contributory negligence, and the plaintiff could or could not recover, as the jury might find from the facts of the position of the arm. The instructions, as we believe, as a whole, fairly and fully stated the law.

The defendant requested the court to modify its second instruction, as follows: "You are instructed that the burden of proof is upon the plaintiff to establish by a fair preponderance of the evidence the negligence of the defendant as alleged in plaintiff's complaint. The defendant denies that the plaintiff was injured through the negligence

of the defendant, and alleges that whatever injuries were received by the plaintiff were by reason of the plaintiff's negligence. Where the defense is based upon the negligent acts of the plaintiff as contributing to the injuries of the plaintiff, the burden of proof is upon the defendant to establish by a fair preponderance of the evidence such contributory negligence." The defendant requested that the court, in addition to this statement, add the following clause: ''Unless the fact that the plaintiff, by his own act, has contributed to cause the injury appears from the plaintiff's evidence, the defendant can avail itself of the contributory negligent acts of the plaintiff, if any, whether established by the evidence of the plaintiff or defendant. " We think that there was no error in the refusal of the court to add the requested clauses, although such clauses undoubtedly state the law. The jury are to take the whole testimony, and say from the whole testimony whether on the part of the plaintiff or the defendant there was contributory negligence; but in this case the defendant had given its testimony, and the plaintiff had given his testimony, and such testimony was contradictory. If there had been no testimony introduced on the part of the defendant, and from the plaintiff's testimony it appeared that he was guilty of contributory negligence, a motion to instruct the jury, presented at the proper time to the court, would be sustained by the court. Such motion does not appear to have been presented in this case, and it was unnecessary to charge the jury in the manner requested by the defendant.

We have examined the fourth, fifth sixth, seventh, eighth, and ninth assignments of error, and do not find them of sufficient gravity to discuss the same at length. The twelfth assignment of error is as follows: ''(12) That the court erred in permitting the following questions to be propounded and answers to be given, to wit: 'Q. How much would you have made on that trip if you had not been in-

jured?  What would have been your fees?  Do you know what your fees would have been on that trip if you had not been prevented by reason of that injury?  A.  Well, sir, I can give it to a man.  Any man can figure it out in a few minutes.  A man can figure it out.  From the trip here 16 miles west of there, it is six cents a mile.  West of the depot there 16 miles, and from there to Paris, it is—I think it is—234 or near 40 miles.  I forget just what it is.'"  We think the question propounded here was a proper question, but the answer given is neither clear nor responsive; nor could a jury determine from the answer what was meant by it; and witness himself winds up his answer by saying he "forgets" whether it is one number of miles or another number of miles.  It would properly have been stricken out on motion, had it been presented to the trial court in that shape.  The court, in overruling the objection to the question, was justified in so doing.  But a motion to strike the answer out as not responsive to the question was not interposed, and consequently the answer was not especially called to the attention of the trial court.

For the reasons given, the court is of the opinion that there is error in the record, and that the case should be remanded for a new trial, and the same is reversed and remanded.

CLAYTON and RAYMOND, JJ., concur.